IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| HORACE G. NORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:06CV541-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Horace G. Norris brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for a closed period of disability and disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On June 25, 2003, plaintiff filed an application for disability insurance benefits.[1] On August 16, 2005, after the claim was denied at the initial administrative levels, an ALJ

---

[1] Plaintiff previously applied for and received benefits for a closed period of disability commencing on October 31, 1995 and ending on July 15, 1998. The ALJ who presided over plaintiff's previous administrative hearing determined that plaintiff was disabled during the closed period due to severe impairments of status post multiple closed head injuries, degenerative disc disease and major depressive disorder, but had experienced medical improvement permitting his return to work. (R. 32-37).

conducted an administrative hearing.[2]  The ALJ rendered a decision on October 21, 2005. The ALJ concluded that plaintiff suffered from the severe impairments of back pain, headaches, bronchitis/chronic obstructive pulmonary disease, hypertension, depression, and borderline intellectual function. (R. 26).  He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform his past relevant (and current) work as a logging tractor operator.  Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act.  On April 20, 2006, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings.  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Cornelius, 936 F.2d at 1145.

---

[2]  At the hearing, plaintiff's counsel advised the ALJ that plaintiff had returned to work on October 3, 2004, and that he was claiming a closed period of disability from April 3, 2003 to October 3, 2004. Plaintiff returned to work operating a "cut down machine," logging equipment which is used to cut and move trees. (R. 445-46).

Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that: (1) the medical evidence during the claimed closed period of disability establishes that plaintiff was disabled because of the negative effect of his emotional problems on his ability to engage in substantial gainful activity; and (2) the ALJ committed an error of law by failing to evaluate plaintiff's disability claim under ¶ 12.02 of the "Listing of Impairments."

Plaintiff specifically directs the court to records of treatment during the period at issue by Dr. Shirah (a family practice physician) and Dr. Reddy (a psychiatrist) in August 2003 and to consultative examinations performed by a family practice physician and a clinical psychologist in October 2003.[3]

On August 12, 2003, plaintiff sought treatment from Dr. Shirah for cough and congestion. Dr. Shirah's treatment note states, "He is on no routine medications presently. He feels that he is doing okay without the Zoloft although his wife disagrees." (R. 139). Three days later, on August 15, 2003, plaintiff reported to Grand View Behavioral Health

---

[3] Plaintiff's most recent previous treatment by Dr. Shirah was in January 2003 and by Dr. Reddy was in February 2001.

Center.  The initial assessment form indicates plaintiff's chief complaint as "I have a real serious depression problem," "Auditory command hallucinations – harm others."  Plaintiff reported depression and auditory hallucinations for the "last 8-9 years." (R. 117). Dr. Reddy recorded plaintiff's "problem list" as auditory hallucinations, fatigue, decreased motivation, appetite, concentration and interest, and "can't get out of bed."  (R. 123).  Plaintiff was not then taking psychiatric medications.  (R. 119, 122).  Dr. Reddy diagnosed plaintiff with ETOH abuse and an Axis I diagnosis of major depression - severe, and gave him a global assessment of functioning (GAF) score of 50.[4]  (R. 122).

Ten days after his visit to Dr. Reddy, plaintiff returned to Dr. Shirah, complaining of "depression." (R. 139). Plaintiff's wife stated "that he has been more depressed and at times hearing voices," and Dr. Shirah noted that his affect was "somewhat blunted."  (Id.).  Dr. Shirah diagnosed depression with psychotic symptoms and advised plaintiff to resume the Zoloft and Risperdal.  (Id.)

---

[4] Making a GAF rating involves picking a single value that best reflects the individual's overall level of functioning.  The description of each 10-point range in the GAF scale has two components: the first part covers symptom severity, and the second part covers function.  The GAF rating is within a particular decile if **either** the symptom severity **or** the level of functioning falls within the range.  For example, the first part of the range 41-50 describes "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" and the second part includes "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  It should be noted that in situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two.

DSM-IV-TR (4th ed., 2000), pp. 32-33 (emphasis in original).  "In most instances, ratings on the GAF Scale should be for the current period (i.e., the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care."  Id. A GAF rating of 41-50 correlates to "serious symptoms" or "serious impairment in social, occupational or school functioning"; a GAF rating of 51-60 correlates to "moderate symptoms" or "moderate difficulty in social, occupational or school functioning."  Id. at 34.

Dr. Lee Stutts, a psychologist, performed a consultative examination on October 2, 2003. Plaintiff "complained of symptoms such as isolating, sadness, sleep problems, anxiety, hopelessness and anhedonia," and reported that these symptoms had persisted "off and on through the nineties and into the current time frame." (R. 148). He also stated that he had "heard people talking to him in the past," but he denied current auditory and visual hallucinations. Plaintiff's wife told Dr. Stutts that plaintiff's symptoms had persisted "off and on" since 1995 and had worsened over the previous year. (R. 148-49). Dr. Stutts diagnosed plaintiff with "Major Depressive Disorder, Recurrent, Moderate to Severe," and stated that "Mr. Norris would likely struggle with normal work pressures based on today's impression." (R. 149A).

On October 7, 2003, plaintiff reported to Dr. Neal Van Marter, a family practice physician, for a consultative physical examination. Dr. Van Marter described plaintiff as "depressed appearing" and noted that "[t]he ZUNG rating scale[5] rates him as severe to extreme depression and this is my impression on clinical exam although he denies being suicidal." (R. 153). Dr. Van Marter's diagnoses included "Chronic back pain, probably musculoligamentous," "Major depression, chronic. Currently on treatment," impaired intellectual functioning, marked passive dependant traits, hypertension, and chronic cigarette abuse. Dr. Van Marter concluded, "He currently is depressed and has been depressed for a long time and is under treatment. He does very little around the house and apparently is not motivated to do anything. He doesn't even drive. He seems to have marked passive

---

[5] See Zung, W.W.K., A Self-Rating Depression Scale, Archives of General Psychiatry 12:63-70 (1965).

dependant traits. He has impaired intellectual functioning and he's poorly educated and does not read well. He is probably not impaired for the type of work that he did previously, but I'm doubtful to how motivated he is to return to work." (R. 153).

Dr. Gloria Roque, a non-examining psychologist, reviewed plaintiff's records and completed a psychiatric review technique form and a mental residual functional capacity assessment on October 29, 2003. She concluded that plaintiff suffered no more than mild to moderate limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. She stated:

> He could follow simple work routines with practice. He could follow simple instructions and sustain attention to routine tasks for at least 2 hr periods. He would benefit from a flexible schedule w/ regular rest breaks and casual supervision. Contact w/ the public should be casual. Feedback should be supportive. He could adapt to gradual change. He would tolerate an evenly paced predictable work environment but not one w. rapid change, excessive workloads or unreasonable deadlines.

(R. 155-72).

The ALJ determined that plaintiff's mental impairments imposed no more than mild to moderate limitations and did not interfere with the performance of medium work consistent with his previous work as a logging tractor operator. The ALJ concluded that there is "no evidence that the claimant experienced disabling symptoms of depression for any period of 12 consecutive months from April 4, 2003 through October 3, 2004." (R. 25). He stated:

> There is no evidence that the claimant experienced more than mild to moderate restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace, for any period of 12 consecutive months from April 4, 2003 through October

> 3, 2004. He had no episodes of decompensation, had no residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate, and did not have an inability to function outside a highly supportive living arrangement for one or more years with an indication of continued need for such an arrangement.

(R. 25-26). The ALJ observed that, although Dr. Van Marter noted in his consultative examination that plaintiff's depression was significant and Dr. Stutts reported that plaintiff would likely struggle with normal work pressures, plaintiff's "treating physicians did not report only two months earlier that the claimant's depressive symptoms were disabling." (R. 25). The medical evidence from practitioners who evaluated plaintiff during the claimed closed period spans – as the ALJ notes – a period of time of less than two months. At the beginning of that two month period, plaintiff reported to Dr. Shirah that he was not then taking psychiatric medication and was doing "okay" without it. Although Dr. Shirah recorded that plaintiff's wife disagreed, he did not then advise plaintiff to resume psychiatric medications. (R. 139). When plaintiff complained of acute symptoms of depression and auditory hallucinations in a visit to Dr. Reddy three days later, Dr. Reddy prescribed Zoloft. The ALJ noted that "[t]he claimant has continued to take the medication prescribed by Dr. Reddy and Dr. Shirah for his depression, and he testified that this medication was effective." (R. 25). As the ALJ observed, plaintiff testified at the administrative hearing that the Zoloft was helping his condition. (R. 454). The ALJ also found it "significant that the claimant has experienced depression for many years, and he has performed work at the substantial gainful activity for much of that time, and currently does so." (R. 25; see also R. 117 (plaintiff's August 15, 2003 report of "depression and auditory hallucinations for last 8-9 years"), R. 148

(depressive symptoms have persisted "off and on through the nineties and into the current time frame")).  Additionally, as the ALJ noted, plaintiff testified that he returned to work in October 2004 because he was "broke."  (R. 23, 447-48).

The claimant bears the burden of showing that he is unable to perform his past relevant work.  See Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991)(citing Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990)); see also Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)("[The social security] regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work.").  The ALJ's determinations regarding plaintiff's limitations are supported by substantial evidence, and plaintiff has not carried his burden of demonstrating that he suffered from disabling symptoms for a period of twelve consecutive months during the claimed closed period.  See Barnhart v. Walton, 535 U.S. 212 (2002)(upholding Commissioner's interpretation of Social Security Act to require that inability to engage in substantial gainful activity must last for twelve months).

Citing a CT scan performed in January 2003 (R. 145) – which showed post-traumatic changes to the left frontal lobe of plaintiff's brain – and the results of WAIS-R testing performed in 1997 (R. 384) – showing a verbal IQ of 74, a performance IQ of 70 and a full scale IQ of 71 – plaintiff argues that remand is required in this case because the ALJ did not evaluate his claim under ¶ 12.02 of the listing of impairments.  Even assuming that the ALJ committed an error of law by failing to evaluate plaintiff's claim by reference to ¶ 12.02 – the listing for organic mental disorders – the error was harmless.  The ALJ included findings

specifically addressed to the "B" and "C" criteria of that listing,[6] determining that plaintiff did not meet either set of criteria.  (See paragraph beginning at the bottom of R. 25 and continuing to R. 26).  Plaintiff would have to satisfy one or the other set of criteria in order to meet the requirements of Listing 12.02.  See ¶ 12.02 ("The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.").  Accordingly, even though the ALJ did not mention ¶ 12.02, his express findings as to the "B" and "C" criteria – which are supported by substantial evidence – preclude a finding that plaintiff met the requirements for this listing.  Cf. Fischer-Ross v. Barnhart, 431 F.3d 729 (7th Cir. 2005)(where ALJ's detailed findings "confirm[ed] rejection of the listings in a manner readily reviewable," the ALJ's failure to make detailed step three findings did not constitute reversible error); Creegan v. Commissioner of Social Security, 2005 WL 1678704 (3rd Cir. Jul 19, 2005)(unpublished opinion)(ALJ did not commit reversible error by failing to explicitly cite listing where the ALJ "implicitly found that the medical evidence failed to satisfy the criteria of that listing and explicitly found that the evidence established that [the claimant] 'has disorders of the back without disk herniation or spinal stenosis and which has never required surgery'").

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.  A separate judgment will be issued.

---

[6] The "B" and "C" criteria for Listings 12.02 (organic mental disorders) and 12.04 (affective disorders) are the same.

DONE, this 25th day of June, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE